```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :     17cv3064(DLC)
YAKEZ THOMPSON,                          :
                        Plaintiff,       :     OPINION AND ORDER
                                         :
            -v-                          :
                                         :
THE CITY OF NEW YORK, NEW YORK CITY      :
POLICE OFFICER ROSANNA CAPELLAN (In an   :
Individual Capacity and In an Official   :
Capacity), and NEW YORK CITY POLICE      :
OFFICER JOHN DOE (fictitious name),      :
JOHN DOE (In an Individual Capacity      :
and In an Official Capacity),            :
                                         :
                        Defendants.      :
                                         :
---------------------------------------- X
```

APPEARANCES:

Counsel for Plaintiff:
Lawrence P. LaBrew
Law Offices of Lawrence LaBrew
160 Broadway, Suite 600
New York, NY 10005

Counsel for Defendants:
Erin T. Ryan
New York City Law Department
100 Church Street
New York, NY 10007

DENISE COTE, District Judge:

　　Plaintiff Yakez Thompson ("Thompson") brings this lawsuit pursuant to Section 1983 against the City of New York ("the City") and two police officers, Rosanna Capellan ("Capellan") and an unnamed officer (collectively "Defendants"). The

Defendants have moved for summary judgment on all claims. For the reasons set forth below, this motion is granted.

**Background**

The following facts are undisputed or taken in the light most favorable to Thompson, unless otherwise noted. This lawsuit arises out of Thompson's arrest on April 27, 2014. Thompson was employed at the time as a driver with a company that contracts with the Metropolitan Transit Authority to provide transportation to individuals with disabilities. That evening, while working, Thompson double parked the vehicle he was driving in order to help a customer exit the vehicle. While parked, Thompson got into an altercation with Angel Porles ("Porles"), who was in a car behind Thompson's vehicle. The parties dispute what transpired during this altercation. All agree that Thompson punched Porles in the face and chest. According to Thompson, Porles physically attacked him without provocation and Thompson struck Porles in self-defense. Thompson returned to his car and drove off.

After leaving the scene, Thompson called 911. Two police officers, Bienvenido Castillo ("Castillo") and Jose Hernandez, arrived at the scene of the altercation, where Porles remained. Castillo spoke with Porles and observed injuries to his head,

including bleeding and bruises. Porles was then taken by ambulance to a hospital.

Thompson returned to the scene, where he was also interviewed by Castillo. Thompson told the police, both when he called 911 and when he returned to the scene, that he had been attacked first. Capellan, who had arrived at the scene after the other two officers, overheard Thompson telling Castillo that he had been assaulted. When Castillo spoke to Capellan, he told her that Thompson "went to the victim . . . and he started punching the victim, and then he went around the vehicle by the driver's side. He dragged the victim from the inside of the vehicle, and he started punching him and kicking him."

Thompson was arrested. According to the Defendants, Castillo made the decision to arrest Thompson and effectuated his arrest. Thompson's arrest was subsequently assigned to Capellan, who processed the arrest and completed the related paperwork. The criminal complaint incorrectly states that Capellan was "informed by Angel Porles" of the details of the incident. Thompson insists that Capellan was the arresting officer.

Thompson was arraigned on charges of assault in the third degree, aggravated harassment in the second degree, attempted assault in the third degree, and harassment in the second

3

degree. These charges were dismissed on December 8, 2014 on speedy trial grounds.

Thompson filed this lawsuit on April 26, 2017. The Complaint contains five federal claims for false arrest, false imprisonment, malicious prosecution, a violation of substantive due process rights, and municipal liability. The motion for summary judgment that is the subject of this Opinion was filed on October 5, 2018.

**Discussion**

Summary judgment may not be granted unless all of the submissions taken together "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Smith v. Cnty. of Suffolk, 776 F.3d 114, 121 (2d Cir. 2015) (citation omitted). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party. See Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992); Gemmink v. Jay Peak Inc., 807 F.3d. 46, 48 (2d Cir. 2015). "[W]here the evidentiary matter in support of the motion does

4

not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004) (citation omitted) (emphasis omitted).

Once the moving party has asserted facts showing that the non-movant's claims or affirmative defenses cannot be sustained, "the party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation omitted). "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment," Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011) (citation omitted), as is "mere speculation or conjecture as to the true nature of the facts." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over material facts will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).

5

False Arrest and Imprisonment

Thompson's first two claims are for false arrest and false imprisonment in violation of the Fourth and Fourteenth Amendments. Under federal law, "[f]alse arrest and false imprisonment are largely synonymous." Jenkins v. City of New York, 478 F.3d 76, 88 n.10 (2d Cir. 2007) (citation omitted). In assessing Fourth Amendment claims of false arrest brought under Section 1983, courts look to the law of the state in which the arrest occurred. Russo v. City of Bridgeport, 479 F.3d 196, 203 (2d Cir. 2007). A false arrest claim under New York law requires a plaintiff to prove "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Liranzo v. United States, 690 F.3d 78, 95 (2d Cir. 2012) (citation omitted).

"To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either (1) he had probable cause for the arrest, or (2) he is protected from liability because he has qualified immunity." Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015). An officer "has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in

6

the belief that the person to be arrested has committed or is committing a crime." Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015) (citation omitted). "Probable cause is determined on the basis of facts known to the arresting officer at the time of the arrest." Shamir v. City of New York, 804 F.3d 553, 557 (2d Cir. 2015) (citation omitted). "[U]nder the collective or imputed knowledge doctrine, an arrest is permissible where the actual arresting officer lacks the specific information to form the basis for probable cause but sufficient information to justify the arrest was known by other law enforcement officials initiating the investigation." Brown v. City of New York, 798 F.3d 94, 99 (2d Cir. 2015) (citation omitted).

"[U]nder some circumstances, a police officer's awareness of the facts supporting a defense can eliminate probable cause." Jocks v. Tavernier, 316 F.3d 128, 135 (2d Cir. 2003). While there is no duty imposed on an arresting officer "to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest," once an officer learns of facts that can establish a defense eliminating probable cause, such as acting in self defense, an officer may not "deliberately disregard facts known to him which establish justification." Id. at 136. But, "[p]robable cause does not necessarily disappear simply because an innocent explanation may be

7

consistent with facts that an officer views as suspicious." Figueroa v. Mazza, 825 F.3d 89, 102 (2d Cir. 2016) (citation omitted).

Thompson's claims for false arrest and imprisonment fail because there was probable cause for his arrest. Whether Capellan is deemed the arresting officer or not, it is undisputed that it was Castillo who made the decision to arrest Thompson. Castillo interviewed both Porles and Thompson regarding what transpired between them. Based on their statements and his observations of the injuries to Porles, Castillo determined that there was probable cause to arrest Thompson for assault. Cappellan and the other officers involved with Thompson's arrest were entitled to rely on Castillo's knowledge and judgment in these circumstances.

Thompson argues that the fact that he called 911 and made statements to the police about being attacked by Porles was sufficient to demonstrate that he had acted in self defense and to vitiate any probable cause for his arrest that would otherwise exist. Thompson's assertions of self defense, however, do not destroy the probable cause for his arrest. The arresting officers in this case were not required to credit his statements in the face of information to the contrary, nor to conduct a mini trial on the issue before making a decision regarding his arrest. While Thompson may have prevailed on a

8

self defense theory had his criminal case moved forward, the officers had sufficient probable cause to effectuate his arrest.

Thompson also appears to argue that no probable cause for the arrest existed because Capellan, who is listed on his arrest paperwork as the arresting officer, did not herself possess sufficient information to believe that Thompson had committed a crime. This notion is incorrect. Castillo gathered sufficient information to provide probable cause for Thompson's arrest. Under the collective or imputed knowledge doctrine, this information provided probable cause for the arrest even if made by Capellan.

Malicious Prosecution

Thompson also claims malicious prosecution in violation of the Fourth and Fourteenth Amendments. To establish a malicious prosecution claim, a plaintiff must prove "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice." Dufort v. City of New York, 874 F.3d 338, 350 (2d Cir. 2017) (citation omitted). "[F]ederal law defines the elements of a § 1983 malicious prosecution claim" and "requir[es] affirmative indications of innocence to establish 'favorable termination.'" Lanning v. City of Glens Falls, 908 F.3d 19, 25 (2d Cir. 2018). "[W]here a

9

dismissal . . . leaves the question of guilt or innocence unanswered, it cannot provide the favorable termination required as the basis for" a claim of malicious prosecution. Id. at 28-29 (citation omitted). To satisfy the malice requirement, the plaintiff must show that the "criminal prosecution was commenced or continued against him with malice, i.e., with a wrong or improper motive, something other than a desire to see the ends of justice served." Fulton v. Robinson, 289 F.3d 188, 198 (2d Cir. 2002) (citation omitted). "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution." Stansbury v. Wertman, 721 F.3d 84, 94-95 (2d Cir. 2013) (citation omitted). "The probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases." Id. at 95. "Probable cause, in the context of malicious prosecution, has . . . been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." Id. (citation omitted).

Thompson' claim for malicious prosecution fails because he cannot show that his criminal case was favorably terminated. The dismissal of his case on speedy trial grounds does not affirmatively indicate his innocence, as required under Section 1983. Thompson's claim for malicious prosecution also fails because the undisputed facts show that probable cause existed.

10

Even under the higher standard for probable cause in this context, Porles' statements to Castillo, Thompson's own admission that he punched Porles, and the officers' observations of Porles' injuries provide sufficient information for a reasonably prudent person to believe that Thompson was guilty of assault.

Substantive Due Process

Thompson's claim of violation of his Fourteenth Amendment right to substantive due process also fails. To establish a violation of substantive due process, a plaintiff must demonstrate that "the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Southerland v. City of New York, 680 F.3d 127, 151-52 (2d Cir. 2012) (citation omitted). Based on the undisputed facts at issue in this case, it cannot be said that the Defendants' arrest of Thompson shocks the conscience. Thompson's key claim here is that the Defendants did not sufficiently credit his claim of self defense. The Defendants, however, had no affirmative duty to further investigate this claim and no obligation to credit Thompson's statements over contrary information.

Municipal Liability

Thompson's claim for municipal liability must also be rejected. "Section 1983 imposes liability on a government that,

11

under color of some official policy, causes an employee to violate another's constitutional rights." Okin v. Village of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 439 (2d Cir.2009) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978)). "To prevail against a municipality on a § 1983 claim, a plaintiff must demonstrate both an injury to a constitutionally protected right and that the injury was caused by a policy or custom of the municipality or by a municipal official responsible for establishing final policy." Hartline v. Gallo, 546 F.3d 95, 103 (2d Cir.2008) (citation omitted). Because, as discussed above, Thompson cannot show injury to any constitutionally protected rights, his claim for municipal liability fails.

Amendment

In opposition to this motion, Thompson seeks to amend his complaint to add Castillo as a defendant. The request is untimely. It is also denied as futile. Had Thompson timely amended his complaint to name Castillo as the John Doe defendant, summary judgment would be granted in favor of Castillo.

## **Conclusion**

The Defendants' October 5, 2018 motion for summary judgment is granted. The Clerk of Court shall enter judgment for the Defendants and shall close the case.

Dated: New York, New York
January 10, 2019

*[signature]*
DENISE COTE
United States District Judge